Debra L. Wabnik (dw-0944)
Stagg Wabnik Law Group LLP
401 Franklin Avenue, Suite. 300
Garden City, New York 11530
(516) 812-4550
dwabnik@staggwabnik.com

*Attorneys for Plaintiff Eboni Joyner*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
EBONI JOYNER,

                        Civil Action No.:  26-CV-04566

              Plaintiff,

  -against-                            **COMPLAINT**


SUCCESS ACADEMY CHARTER SCHOOLS, INC.,    **JURY TRIAL DEMANDED**

              Defendant.
--------------------------------------------------------------------X

      Plaintiff Eboni Joyner ("Plaintiff"), by and through her attorneys, Stagg Wabnik Law

Group LLP, as and for her Complaint against Defendant Success Academy Charter Schools, Inc.

("Success Academy") herein alleges as follows:

## NATURE OF ACTION

      1.      Plaintiff brings this action against Success Academy under the New York City

Human Rights Law ("NYCHRL"), Fair Labor Standards Act ("FLSA") and the New York Labor

Law ("NYLL") for discrimination and retaliation based on her caregiver status, and overtime

violations.

      2.      While employed by Success Academy, Plaintiff ran into persistent obstacles from

Success Academy management as she attempted to balance her professional responsibilities and

her personal life as a single mother to her child.  Success Academy refused to comply with

1

Plaintiff's reasonable attempts to seek accommodation for her caregiver status, making her stay after 5:00 p.m. when it was not necessary for her job and then terminating her when she could not find childcare even though she used available paid time off.

3. Compounding matters, Success Academy misclassified Plaintiff as an exempt employee even though she performed only clerical tasks. Plaintiff is owed significant straight time and overtime as a result.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws of the United States. Specifically, Plaintiff asserts a claim under the Fair Labor Standards Act for Success Academy's failure to pay overtime.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred in within this district.

## PARTIES

7. Plaintiff is an individual residing in Fresh Meadows, New York, and, at all relevant times herein, was employed by Success Academy within the meaning of the NYCHRL, FLSA and NYLL.

8. At all relevant times herein, Success Academy was and is a Delaware not-for-profit corporation doing business in the State of New York, with its principal place of business at 95 Pine Street, Floor 6, New York, NY 10005. Success Academy was and is an employer and a covered entity as these terms are defined the NYCHRL, FLSA, and NYLL.

2

## STATEMENT OF FACTS

A.    Plaintiff's Job with Success Academy

9.    Plaintiff began working at Success Academy's Ozone Park Middle School ("Ozone Park School") in August 2023 as an Operations Specialist.

10.    As an Operations Specialist, Plaintiff assisted with the day-to-day operations of the Ozone Park School, including the handling of attendance, organizing, purchasing, boxing and unboxing of supplies for the building, and assisting in supervising the students during recess, lunch, and dismissal.

11.    Plaintiff was also involved in hosting events for parents, staff, and scholars at the building.

B.    Plaintiff was Not Compensated for Overtime Hours

12.    Plaintiff worked five days a week, from 7 a.m. to at least 5 p.m., for a total of 50 or more hours per week.  Plaintiff was not given and did not take any uninterrupted meal breaks of 30 minutes or more.

13.    Plaintiff's work was almost entirely clerical, requiring little exercise of discretion or judgment, and her work was always assigned to her by a superior. Plaintiff's job required no specialized technical or scientific knowledge.

14.    Plaintiff did not fit into any of the exemptions that would relieve Success Academy from paying Plaintiff overtime, such as the professional, executive or administrative exemption. Nonetheless, Success Academy did not pay Plaintiff on an hourly basis and instead paid her the same amount each week regardless of how many hours she worked.  It also did not pay her overtime for the hours over 40 she worked each week.

15.    Plaintiff's regular rate of pay was $30 per hour.  Her overtime rate was $45 per

3

hour.  Plaintiff was entitled to receive $45 per hour for all hours worked over 40 in a given week, which was at least ten hours per week, or $450 per week.  Success Academy's failure to pay Plaintiff for any of the hours over 40 from August 2023 to November 2025 violated the NYLL and the FLSA.

C.      Success Academy Discriminated Against Plaintiff's Caregiver Status

16.     Plaintiff was a solid employee, never having received formal discipline and dutifully performing her job.

17.     Upon her hiring, Plaintiff was instructed that she would be working Monday through Friday, 7 a.m. to 5 p.m.

18.     Through May 2025, Plaintiff routinely worked from 7 a.m. to 5 p.m. (or later) without any breaks. Plaintiff was not given sufficient time to take breaks for lunch.

19.     Plaintiff went on medical leave from Success Academy in May 2025 and returned to work in September 2025.

20.     While Plaintiff was on medical leave, there was a major staff and management overhaul at the Ozone Park School and many of the people she had worked with for almost two years were no longer at Success Academy.

21.     Prior to going on medical leave, Plaintiff was able to leave work at 5 p.m. almost every day, which enabled her to be able to pick up her son from school.

22.     Plaintiff is the sole caregiver of her 8-year-old son, who attended Success Academy at its Rosedale location. Plaintiff lacked alternatives for childcare, meaning that whenever her son was not at school, Plaintiff would scramble to find alternative childcare.

23.     Upon her return to Success Academy in September 2025, Plaintiff found that the staff had been overhauled at the Ozone Park School and that there was new management in charge

4

of her location.

24. The Ozone Park School was now under the supervision of Building Operations Manager Preya Sudama ("Sudama").

25. On September 5, 2025, her first day back from leave, Plaintiff had a conversation with Sudama regarding childcare needs for her son. Plaintiff explained that her young son needed to be picked up after school from Success Academy Rosedale and that while she did not need to leave at exactly 5 p.m., she needed to leave close to then and she understood that all her tasks needed to be completed first. Sudama was seemingly receptive to Plaintiff's request at first, telling her that if she had to leave at 5 p.m., then she could do so once all tasks were done for the day.

26. Plaintiff asked for an email from Sudama confirming this conversation, and while Sudama verbally agreed to send one, she did not follow through.

27. On September 8, 2025, Plaintiff finished up her work around 5 p.m. She therefore asked Sudama if it would be alright if she left to go pick up her son. Despite their conversation a few days earlier, Sudama surprisingly responded "Not really, but okay. We are going to have to talk about this."

28. Plaintiff reminded Sudama of their prior conversation and reiterated the need for her to leave to pick up her son. Sudama's sudden change in position confused Plaintiff and caused her stress, as she did not have alternative childcare available.

29. The next day Plaintiff came into work and was asked to join a Zoom meeting with Sudama and Regional Operations Manager Taylor Hamerman ("Hamerman").

30. In this meeting, Sudama completely reversed her position from the September 5th conversation with Plaintiff, telling Plaintiff that leaving at 5 p.m. was not permitted. Plaintiff explained that when she was hired, she was told that the hours for the position were 7 a.m. to 5

5

p.m. Hamerman denied this to be true.

31.    Sensing that Success Academy would no longer accommodate her childcare needs, Plaintiff asked about childcare resources for employees of Success Academy. Hamerman labeled Plaintiff as "unprofessional" for making such an accommodation request.

32.    During the Zoom meeting, Plaintiff was explicitly told by Sudama that "This is the way things are. We don't leave at 5. You're going to have to stay until about 6:15 p.m." Sudama then followed up on this by asking Plaintiff, "So what are you going to do?"

33.    This exchange left Plaintiff pressured to either resign her position or risk termination solely because of her need to care for her child.

34.    However, once Plaintiff explained that her son attended another Success Academy location in Rosedale, the tone of the conversation seemed to soften, and Hamerman told Plaintiff that she would "look into it." Hamerman instructed Plaintiff to submit an emergency personal day so that she could leave at 5 p.m. that day.  This request was ultimately denied by Success Academy's support team, but Plaintiff was able to leave once all duties were completed.

35.    That afternoon, Hamerman sent Plaintiff an email recapping the meeting, agreeing that Plaintiff may leave once all tasks are completed and appreciating that Plaintiff was offering to provide support to other members of the team to ensure the work is completed.

36.    Plaintiff responded to the email an hour later, clarifying that she did not need to leave at exactly 5 p.m., but wanted flexibility to leave to manage her childcare responsibilities.

37.    Following these interactions, Plaintiff was frustrated with the inconsistent messaging coming from Success Academy and was stressed out over Sudama's thinly veiled threat that she stay until 6:15 p.m. or risk termination.

38.    On September 9, 2025, Plaintiff submitted a formal written complaint to Success

Academy's Human Resources department, outlining her concerns from her discussions with Sudama and Hamerman. The complaint mentioned the threatening tone of the conversation and how despite years of being allowed to leave at 5 p.m. or upon completion of all duties, the new supervisors were making it impossible to care for her child and still have a job. Plaintiff further referenced the lack of support in place for employees who have children enrolled in Success Academy.

39.    Plaintiff received a response from Human Resources stating that her complaint would be looked into, however, no substantive response was ever provided.

40.    The back and forth from Success Academy regarding whether Plaintiff would receive scheduling flexibility caused Plaintiff a lot of stress. Plaintiff ended up calling out of work on September 10th due to the severe anxiety surrounding the situation.

41.    Not long after her complaint to Human Resources, Plaintiff began to receive assignments late in the day from Sudama, aimed at giving Plaintiff extra work which would prevent her from being able to leave at 5 p.m.

42.    For example, Sudama directed Plaintiff at 4:45pm each day to handle ensuring that all emails which were sent to the office were responded to. Depending on the day, this task could take past 5 p.m. and would delay Plaintiff's departure to pick up her son.

43.    Success Academy also questioned Plaintiff's use of her PTO in ways it had not done previously. On November 6, 2025, Plaintiff requested off on November 10th for a medical appointment/procedure. Hamerman responded that Plaintiff had been absent 12 times in two months.

44.    Plaintiff explained that those absences were all approved and consisted of three bereavement days following her father's passing, three pre-approved PTO days, two documented

doctor's appointments, and approved sick days.

45.    Plaintiff was concerned that this monitoring of her time off was a way for Success Academy to find a reason to discipline her for her prior requests for flexibility to pick up her son.

46.    On Friday, November 7, 2025, Success Academy had a scheduled Professional Development ("PD") day for its staff at all locations. No classes were held on PD days, but staff were still required to report to work.

47.    Since Plaintiff's son also attended Success Academy, this meant that he was off from school and Plaintiff needed to find alternative childcare coverage.

48.    Sudama sent a schedule to employees via Slack, showing arrival times for employees ranging from 7:30 a.m. to 8:30 a.m. Plaintiff believed her arrival time that day was 8:30 a.m.

49.    That morning, Plaintiff received a call from Hamerman, claiming that the arrival time was 8am and asking Plaintiff if she would be coming in.  Plaintiff explained that she was confused by the message, as this was her first PD day under the new management. Hamerman told Plaintiff to speak to Sudama.

50.    Plaintiff messaged Sudama on Slack explaining that she was unable to secure childcare. Sudama suggested that Plaintiff file an emergency PTO request, which she did. The emergency request was granted.

51.    After her request was approved, Plaintiff reached out to Human Resources again asking about additional resources and/or flexibility for employees with children enrolled in Success Academy. HR responded by providing Plaintiff with information for Bright Horizons Emergency Care and gave her a login. The login provided did not work and Plaintiff was not able to access Bright Horizon's services.

8

52. Shortly thereafter, Edwina Perfanov ("Perfanov") of Success Academy reached out to Plaintiff.

53. Perfanov and Plaintiff spoke on Sunday, November 9, 2025, and Perfanov informed Plaintiff that she was terminated, effective immediately.

54. When Plaintiff inquired as to why she was fired, Perfanov stated that it was due to "communication issues." However, Perfanov specifically stated that "We don't leave early and we don't not come to work on PD days."

55. Success Academy discriminated against Plaintiff because of her caregiver status by terminating her just two days after she used an approved PTO day due to being unable to find childcare. This action combined with Success Academy's overall course of conduct toward Plaintiff regarding her caregiver status shows its discriminatory intent.

56. Plaintiff's termination also occurred just 2 days after Plaintiff's complaint to Human Resources about Success Academy's discrimination based on her caregiver status.

57. As a result of Success Academy's discriminatory and retaliatory actions, Plaintiff felt humiliated, degraded, embarrassed and emotionally distressed.

**AS AND FOR A FIRST CAUSE OF ACTION**
**AGAINST SUCCESS ACADEMY**
**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE §8-107(1)(a)**
**(Caregiver Status Discrimination in Violation of NYCHRL)**

58. Plaintiff hereby repeats, realleges, and reiterates all of the allegations stated above as fully set forth herein.

59. New York City Administrative Code §8-107(1)(a)(3) provides that it shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the caregiver status of any person to discriminate against such person in compensation or in terms, conditions, or privileges of employment.

9

60.     In the relevant period set forth herein, Plaintiff maintained caregiver status under New York Administrative Code § 8-107(1)(a)(3) because she provided direct and ongoing care for her minor child.

61.     Plaintiff made clear to Success Academy on numerous occasions that she is the sole caregiver for her son and that she needed flexibility in her schedule after hours to assist with her caregiver functions.

62.     Plaintiff expressed these concerns to Sudama and Hamerman in their meetings upon her return from medical leave.

63.     Success Academy knew Plaintiff took off on the PD day on November 7, 2025, due to being unable to find alternative childcare for her son.

64.     Success Academy was prohibited from terminating Plaintiff based on her caregiver status.

65.     Yet, Success Academy terminated Plaintiff based on her caregiver status, just two days after she used an emergency PTO day due to being unable to find alternative childcare for her son.

66.     As a direct and proximate result of Success Academy's unlawful discriminatory conduct in violation of NYC Admin. Code. § 8-107, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages. Plaintiff is also entitled to backpay, front pay, punitive damages, and attorneys' fees in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST SUCCESS ACADEMY**
**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE §8-107(7)**
**(Retaliation in Violation of NYCHRL)**

67.     Plaintiff hereby repeats, realleges, and reiterates all of the allegations stated above

10

as fully set forth herein.

68.    New York City Administrative Code § 8-107(7) makes it an unlawful discriminatory practice "for any person…to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter."

69.    In the relevant period set forth herein, Plaintiff maintained caregiver status under New York Administrative Code § 8-107(1)(a)(3) because she provided direct and ongoing care for her minor child.

70.    Plaintiff engaged in protected activity when she complained to Human Resources on September 9, 2025, regarding the discriminatory treatment she was receiving based on her caregiver status and the comments made by Hamerman and Sudama.

71.    Plaintiff also engaged in protected activity on November 7, 2025, when she reached out to Human Resources again, seeking information about potential resources and flexibility for parents employed by Success Academy.

72.    Success Academy was aware that Plaintiff engaged in this protected activity as she received responses acknowledging her complaints and requests.

73.    Success Academy, by terminating Plaintiff after she engaged in this protected activity and based on her caregiver status, engaged in conduct likely to deter a person from engaging in such protected activity.

74.    Success Academy was not happy with Plaintiff asking for accommodation based on her caregiver status and did not like the fact that she complained to Human Resources.

75.    As a direct and proximate result of Success Academy's unlawful retaliatory conduct in violation of NYC Admin. Code. § 8-107, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress for which he is entitled to an award of monetary damages. Plaintiff is also entitled to backpay, front pay, punitive damages, and attorneys' fees in an amount

to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST SUCCESS ACADEMY**
**VIOLATION OF FLSA 29 U.S.C. § 207**
**(Failure to Pay Overtime)**

76.     Plaintiff hereby repeats, realleges, and reiterates the allegations stated above as fully set forth herein.

77.     The FLSA provides that no employer shall employ any employees for a workweek longer than forty hours unless such employee receives compensation in excess of the hours above at a rate not less than one and one-half times the regular rate at which the employee is employed.

78.     Plaintiff is a covered employee for purposes of the FLSA.

79.     Throughout her tenure with Success Academy, Plaintiff routinely worked more than forty hours a week.

80.     Upon her hiring in August 2023, Plaintiff was told that the hours for her position were 7 a.m. until 5 p.m. -- 10 hour days, 5 days per work.

81.     Plaintiff consistently worked from 7 a.m. until 5 p.m. (or later) at Success Academy without taking a lunch break up until her termination in November 2025.

82.     By working from 7 a.m. until 5 p.m. (or later) every day without any breaks, Plaintiff worked at a minimum 50 hours per week, entitling her to 10 hours of overtime per week minimum.

83.     Yet, Plaintiff never received any of the overtime compensation she was entitled to during her tenure with Success Academy.

84.     For example, in the pay period of September 1, 2024 through September 15, 2024, Defendant contends Plaintiff worked 86.67 hours, yet Plaintiff received no overtime

compensation.

85.     Plaintiff never was paid overtime for the hours she worked at the required one and one-half-time rate.

86.     Plaintiff's work was primarily clerical, not requiring little exercise of discretion or judgment, and her work was always assigned to her by a superior.

87.     This willful failure to properly pay Plaintiff for those additional hours over forty violates the FLSA.

88.     As a direct and proximate result of Success Academy's failure to pay overtime, Plaintiff is entitled to her unpaid overtime compensation, with interest, plus an equal amount in liquidated damages. Plaintiff is also entitled to attorney's fees and costs associated with the prosecution of this action.

**AS AND FOR A THIRD CAUSE OF ACTION
AGAINST SUCCESS ACADEMY
VIOLATION OF NYLL § 193
<u>(Failure to Pay Overtime)</u>**

89.      Plaintiff hereby repeats, realleges, and reiterates the allegations stated above as fully set forth herein.

90.     The NYLL provides that no employer shall employ any employees for a workweek longer than forty hours unless such employee receives compensation in excess of the hours above at a rate not less than one and one-half times the regular rate at which the employee is employed.

91.     Plaintiff is a covered employee for purposes of the NYLL.

92.     Throughout her tenure with Success Academy, Plaintiff routinely worked more than forty hours a week.

93.     Upon her hiring in August 2023, Plaintiff was told that the hours for her position

were 7 a.m. until 5 p.m. -- 10 hour days, 5 days per work.

94.     Plaintiff consistently worked from 7 a.m. until 5 p.m. (or later) at Success Academy without taking a lunch break up until her termination in November 2025.

95.     By working from 7 a.m. until 5 p.m. (or later) every day without any breaks, Plaintiff worked at a minimum 50 hours per week, entitling her to 10 hours of overtime per week minimum.

96.     Yet, Plaintiff never received any of the overtime compensation she was entitled to during her tenure with Success Academy.

97.     For example, in the pay period of September 1, 2024 through September 15, 2024, Defendant contends Plaintiff worked 86.67 hours, yet Plaintiff received no overtime compensation.

98.     Plaintiff never was paid overtime for the hours she worked at the required one and one-half-time rate.

99.     Plaintiff's work was primarily clerical, not requiring little exercise of discretion or judgment, and her work was always assigned to her by a superior.

100.    Plaintiff never was paid overtime for the hours she worked at the required one and one-half-time rate.

101.    This willful failure to properly pay Plaintiff for those additional hours over forty violates the NYLL.

102.    As a direct and proximate result of Success Academy's failure to pay overtime, Plaintiff is entitled to her unpaid overtime compensation, plus an equal amount in liquidated damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests a judgment against Success Academy for the following:

A. Directing Success Academy to pay Plaintiff her actual damages resulting from caregiver discrimination, and retaliation, in an amount to be determined at trial;

B. Directing Success Academy to compensate Plaintiff for its failure to pay her overtime wages in the amount of the unpaid wages as well as liquidated damages;

C. Awarding Plaintiff punitive damages against Success Academy in an amount to be determined at trial;

D. Awarding Plaintiff costs that Plaintiff has incurred in this action, disbursements of this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

E. Awarding such other and further relief as the court deems just and equitable.

Dated: Garden City, New York
    July 28, 2026

Stagg Wabnik Law Group LLP

By: *Debra L Wabnik*

    Debra L. Wabnik
    Michael J. Bauer
    401 Franklin Avenue, Suite 300
    Garden City, New York 11530
    (516) 812-4550
    dwabnik@staggwabnik.com